[Nos. 75459-4; 75537-0.   En Banc.]
Argued November 10, 2004.     Decided May 5, 2005.

*In the Matter of the Personal Restraint of* ERIC MARKEL,
*Petitioner.*

*In the Matter of the Personal Restraint of* LEADEE MARKEL,
*Petitioner.*

*Rodney Reinbold*, for petitioners.

*Karl F. Sloan, Prosecuting Attorney for Okanogan County*, and *Jennifer R. Richardson, Deputy*, for respondent.

*Sheryl G. McCloud, James E. Lobsenz, Rita J. Griffith*, and *Jeffrey L. Fisher* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

¶1 OWENS, J. — Petitioners Eric and Leadee Markel (Markels) seek reversal of their convictions under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), resentencing under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and

appointment of counsel at public expense. In March 1991, the Markels were each convicted by a jury on four counts of first degree rape of a child of their then five-year-old daughter, Ricki Markel. Ricki was ruled incompetent to testify at trial, and her account of the Markels' conduct was related to the jury under the child hearsay exception by multiple witnesses. The Markels were sentenced to the minimum term within the applicable sentencing range of 210-280 months on each count, to be served concurrently, and both are currently serving that sentence. Because *Crawford* does not apply retroactively to cases on collateral review, and because the Markels' sentencing does not raise a *Blakely* issue, their personal restraint petitions must be dismissed.

## FACTS

### A. Background

¶2 The Markels were charged either directly or as accomplices with first degree rape of a child in the following manner:

Count I:  Digital penetration of the mother by the child on or about November 24, 1990; father accomplice.

Count II:  Penile penetration by the father on or about November 24, 1990; mother accomplice.

Count III:  Digital penetration of the child by the father between September 1 and November 24, 1990; mother accomplice.

Count IV:  Digital penetration of the child by a parent between September 1 and November 24, 1990; other parent an accomplice.

Count V:  Contact by the child's mouth with the mother's vagina between September 1 and November 24, 1990; father accomplice.

Excerpt of Record (ER) at 129-32, Third Am. Information; ER at 133-34, Additional Bill of Particulars.

¶3 In a pretrial hearing, Ricki was declared incompetent to testify at trial because of her age. The court went on to rule that the child hearsay exception was applicable as to testimony of five witnesses: (1) Leola Houtz, Ricki's grandmother, (2) Keith Houtz, Ricki's grandfather, (3) Arlen Johnson, the nurse practitioner who first examined Ricki, (4) Suzanne Craig, a Department of Social and Health Services social worker, and (5) Officer Joe Somday of the Omak Police Department, who recorded an interview with Ricki. Each of these witnesses related to the jury various statements made by Ricki concerning the sexual abuse allegations. In March 1991, the jury found both Leadee and Eric Markel guilty of counts I, II, IV, and V, based largely on the hearsay testimony, with some corroborating medical evidence. The Markels' four first degree rape of a child convictions resulted in an offender score of 9 with a seriousness level of 11. Consequently, the applicable sentencing range was 210-280 months, out of which the Markels each received 210 months.

## B. Procedural History

¶4 After their trials, the Markels undertook a direct appeal to Division Three of the Court of Appeals, which affirmed the convictions. *State v. E.D.M.* and *State v. L.M.M.*, noted at 70 Wn. App. 1064 (1993). This court entered an order denying the Markels' petition for review on February 2, 1994. *State v. E.D.M.*, 123 Wn.2d 1009, 869 P.2d 1084 (1994). In 1995, the Markels filed personal restraint petitions in Division Three of the Court of Appeals challenging the use of child hearsay under the then-applicable confrontation clause requirements articulated in *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). Those petitions were dismissed by the Court of Appeals, and this court again denied review. Finally, the Markels filed petitions for writs of habeas corpus in United States District Court for the Eastern District of Washington, again challenging, inter alia, the admission of the child

hearsay statements under *Ohio v. Roberts*. The Markels' habeas corpus petitions were dismissed by the district court, and the United States Court of Appeals for the Ninth Circuit affirmed on August 1, 2000. *Markel v. Walter*, noted at 232 F.3d 895 (9th Cir. 2000) (unpublished).

## ISSUES

¶5 1. Does *Crawford* apply retroactively to cases on collateral review that have been deemed "final" for purposes of direct review?

¶6 2. Are *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely* implicated where the trial court sentenced the Markels to the low end of the applicable range, but the jury verdict did not specify the exact dates of the conduct constituting the basis for each count?

¶7 3. Do *Apprendi* and *Blakely* apply retroactively to cases on collateral review that have been deemed "final" for purposes of direct review?

¶8 4. Are the Markels entitled to the appointment of counsel at public expense?

## STANDARD OF REVIEW

¶9 On collateral review, a petitioner raising a new issue must show that he or she was actually and substantially prejudiced by constitutional error or that a nonconstitutional error occurred constituting a fundamental defect that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994). The bar on successive petitions under RCW 10.73.140 does not apply to the state Supreme Court. *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 566, 933 P.2d 1019 (1997). However, where the second petition is similar to the first, "good cause" must be shown. *Id.* at 564-66.

## ANALYSIS

### A. *Crawford*'s Retroactivity

¶10  Historically, we have attempted to maintain congru-
ence in our retroactivity analysis with the standards articu-
lated by the United States Supreme Court.[1] *See In re Pers.
Restraint of Sauve*, 103 Wn.2d 322, 328, 692 P.2d 818 (1985)
(holding that the balancing test established by the United
States Supreme Court was still appropriate to determine
the retroactivity or nonretroactivity of a new decision); *In re
Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 324-26, 823
P.2d 492 (1992) (stating that "we have attempted from the
outset to stay in step with the federal retroactivity analy-
sis," and discussing a recent change in the federal
retroactivity analysis); *In re Pers. Restraint of Benn*, 134
Wn.2d 868, 940, 952 P.2d 116 (1998) (citing the federal
analysis discussed by this court in *St. Pierre* as the current
retroactivity analysis in Washington State). *Cf. State v.
Hanson*, 151 Wn.2d 783, 789, 91 P.3d 888 (2004) (stating
that *St. Pierre* sets out the current *prospective* application
analysis in Washington, which is derived from the two
United States Supreme Court retroactivity analysis cases
cited in *St. Pierre*).

■ ¶11  The current incarnation of our retroactivity
analysis was first summarized in *St. Pierre* as follows:

> 1. A new rule for the conduct of criminal prosecutions is to be
> applied retroactively to all cases, state or federal, pending on
> direct review or not yet final, with no exception for cases in
> which the new rule constitutes a clear break from the past.
>
> 2. A new rule will not be given retroactive application to
> cases on collateral review except where either: (a) the new rule
> places certain kinds of primary, private individual conduct

---

[1] While we have long looked to the federal retroactivity analysis for guidance,
our use of this analysis does not necessarily define the full scope of RCW
10.73.100(6). We do not foreclose the possibility that there may be a case where a
petitioner would not be entitled to relief under the federal analysis as it exists
today, or as it may develop, but where sufficient reason would exist to depart from
that analysis. This is not that case.

beyond the power of the state to proscribe, or (b) the rule requires the observance of procedures implicit in the concept of ordered liberty.

118 Wn.2d at 326 (citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987); *Teague v. Lane*, 489 U.S. 288, 311, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)). In this case, part one of the analysis is inapplicable because the Markels long ago exhausted direct review and their cases are now final. Part two, subsection (a), is also inapplicable because *Crawford* did not announce a new rule of substantive law but, rather, articulated a change in the procedures required under the Sixth Amendment's confrontation clause. Thus, the question presented is whether *Crawford* is a "new rule" of procedure "implicit in the concept of ordered liberty" under the so-called *Teague* analysis.

¶12 The United States Supreme Court has recently described the *Teague* analysis as "giv[ing] retroactive effect to only a small set of ' "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.' " *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 2523, 159 L. Ed. 2d 442 (2004) (quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990) (quoting *Teague*, 489 U.S. at 311)). Further, "the rule must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.' " *Id.* (quoting *Teague*, 489 U.S. at 313). Finally, the Court has noted that "[t]his class of rules is extremely narrow, and 'it is unlikely that any . . . "ha[s] yet to emerge." ' "[2] *Id.* (alteration in original) (quoting *Tyler v. Cain*, 533 U.S. 656, 667 n.7, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001) (quoting

---

[2] As amicus curiae Washington Association of Prosecuting Attorneys correctly states, the United States Supreme Court has yet to hold that *any* rule falls within the "watershed rules of criminal procedure" exception described in *Teague. See United States v. Mandanici*, 205 F.3d 519, 529 (2d Cir. 2000) (taking note that "[b]eginning with the rule at issue in *Teague*, the Court has measured at least eleven new rules, or proposed new rules, of criminal procedure against the criteria for the second exception and, in every case, has refused to apply the rule at issue retroactively"); *see also United States v. Sanchez-Cervantes*, 282 F.3d 664, 669 n.23 (9th Cir. 2002).

*Sawyer v. Smith*, 497 U.S. 227, 243, 110 S. Ct. 2822, 111 L. Ed. 2d 193 (1990))). It is with these principles in mind that we evaluate the possible retroactive application of *Crawford*.

■ ¶13 Amicus curiae Washington Association of Criminal Defense Lawyers (WACDL) first raises the possibility that the *Teague* analysis does not apply because *Crawford* is not a "new rule." This argument is unavailing. A "new rule" is one that "breaks new ground" or "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301. The testimony the Markels now argue was erroneous under *Crawford* was held admissible under *Ohio v. Roberts* on multiple occasions.[3] The State concedes, without specifying, that some of that testimony would now be inadmissible under *Crawford*. Thus, while the reasoning in *Crawford* relied upon the historical underpinnings of the confrontation clause, the rule itself is a departure from previous United States Supreme Court precedent. Additionally, as WACDL states elsewhere in its amicus brief, the *Crawford* Court "explicitly overturn[ed] its own prior decision of 24 years before in *Ohio v. Roberts*" and *Crawford* is an "upheaval[ ] in confrontation clause law." WACDL Br. at 11. As defined in the *Teague* analysis, *Crawford* articulated a new rule of criminal procedure.

¶14 Although the question of whether *Crawford* applies retroactively has yet to be addressed in our appellate courts, several federal courts and appellate courts in other states have done so under the *Teague* analysis discussed above. With only two apparent exceptions, all of these courts have concluded that *Crawford* does not apply retroactively to cases on collateral review. *See Mungo v. Duncan*, 393 F.3d 327, 334-36 (2d Cir. 2004); *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005); *Murillo v. Frank*, 402 F.3d

[3] The trial court conducted a pretrial hearing on the admissibility of the child hearsay, and the confrontation clause challenge was litigated under the *Ohio v. Roberts* standard in both a previous personal restraint petition and a habeas corpus petition in federal court that was ultimately heard by the Ninth Circuit Court of Appeals.

786, (7th Cir. 2005); *Evans v. Luebbers*, 371 F.3d 438, 444 (8th Cir. 2004); *Brown v. Uphoff*, 381 F.3d 1219, 1227 (10th Cir. 2004); *Haymon v. New York*, 332 F. Supp. 2d 550, 557 (W.D.N.Y. 2004); *People v. Edwards*, 101 P.3d 1118 (Colo. Ct. App. 2004). *But see Bockting v. Bayer*, 399 F.3d 1010, 1021-24 (9th Cir. 2005) (stating that *Crawford* is a watershed rule of criminal procedure with concurrence agreeing in principle, but arguing that *Crawford* is not a "new rule" of criminal procedure); *Richardson v. Newland*, 342 F. Supp. 2d 900, 923-25 (E.D. Cal. 2004) (opining that *Crawford* is not a "new rule" of criminal procedure for purposes of the *Teague* retroactivity analysis, but concluding that the defendant's habeas corpus petition should be granted because his confrontation clause rights were violated even under *Ohio v. Roberts*).[4]

¶15 Without addressing the validity or existence of the cases holding that *Crawford* is not to be applied retroactively under *Teague*, the Markels and WACDL argue that *Crawford* is a "watershed rule of criminal procedure." In doing so, they eschew discussion of the retroactive application of *Crawford* itself and, instead, rely on three cases where a change in the confrontation clause analysis was applied retroactively. Two of the cases, *Roberts v. Russell*, 392 U.S. 293, 88 S. Ct. 1921, 20 L. Ed. 2d 1100 (1968), and *Berger v. California*, 393 U.S. 314, 89 S. Ct. 540, 21 L. Ed. 2d 508 (1969), are per curiam decisions decided by the United States Supreme Court under a retroactivity doctrine later superseded by *Teague*. In deciding the outcome of a habeas corpus petition, the *Roberts* Court applied the rule that the admission of a defendant's extrajudicial confession implicating a codefendant violates the right to cross-exami-

---

[4] We respectfully disagree with the lead opinion and concurrence in *Bockting* to the extent the Ninth Circuit's analysis differs from our own. Additionally, we note that the dissent's characterization of *Bockting* as "more than persuasive" is simply incorrect. *See* dissent at 277-78. We have never held that an opinion from the Ninth Circuit is more or less persuasive than, for example, the Second, Sixth, Seventh, Eighth, or Tenth Circuits—all of which have taken a position contrary to *Bockting*. Finally, the availability of a renewed habeas corpus petition is not only unknown, as we cannot foresee whether en banc review by the Ninth Circuit or review by the United States Supreme Court is forthcoming, but it is also irrelevant for the purposes of developing our own retroactivity jurisprudence.

nation under the confrontation clause retroactively. 392 U.S. at 294. In contrast, *Berger* was not a case before the Court on collateral review and would not, therefore, be subject to the *Teague* analysis if decided today. 393 U.S. 314. The *Berger* Court held that a new rule, stating that the absence of a witness from the jurisdiction would not justify the use at trial of preliminary hearing testimony unless the state made a good faith effort to secure the witness' presence, applied retroactively. *Id.* at 314-15.

¶16 Both *Roberts* and *Berger* applied the retroactivity doctrine established in *Linkletter v. Walker*, 381 U.S. 618, 639, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965) (stating that rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial are applied retroactively), which was discussed and superseded by the analysis established in *Teague*. *See St. Pierre*, 118 Wn.2d at 324-26 (describing the evolution of the federal retroactivity doctrine from *Linkletter* to *Teague*). Because *Roberts* and *Berger* were not subject to the strict limitations on retroactivity that apply to cases on collateral review after *Teague*, they provide little or no persuasive analogy to *Crawford*.

¶17 WACDL's third source of authority for its argument that *Crawford* is a "watershed rule of criminal procedure" is *Graham v. Hoke*, 946 F.2d 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 1039 (1992). In *Graham*, the Second Circuit evaluated the retroactivity of a confrontation clause case decided by the United States Supreme Court, which held that a defendant's confession may not be admissible against a codefendant in a joint trial even if the codefendant has separately confessed. 946 F.2d at 993. *Graham* applied the rule retroactively to a case on collateral review as a watershed rule of criminal procedure under *Teague*. *Id.* Despite the retroactive application of the rule, the *Graham* court went on to ultimately dismiss the habeas corpus petition on harmless error grounds. *Id.* at 997. In essence, we are asked to ignore the multitude of state and federal courts that have explicitly held that *Crawford* does not apply retroactively to

cases on collateral review under *Teague* and instead hold
that *Crawford* does apply retroactively because it has some
similarity to the Second Circuit's decision in *Graham*,
relating to the use of out of court confessions by codefen-
dants. We decline the invitation to disregard several cases
directly on point in favor of a tenuously analogous case that
was decided well before the *Teague* analysis was fully
developed.[5]

¶18 In sum, we agree with the overwhelming majority
of courts holding that *Crawford* did not announce a " ' "wa-
tershed rule[ ] of criminal procedure' " . . . . ' without which
the likelihood of an accurate conviction is *seriously* dimin-
ished' " under the *Teague* analysis. *Schriro*, 542 U.S. at 352
(quoting *Teague*, 489 U.S. at 313 (quoting *Saffle*, 494 U.S. at
495 (quoting *Teague*, 489 U.S. at 311))). Instead, *Crawford* is
plainly seen as a new definition of the confrontation clause
requirements, intended to more accurately reflect the con-
stitutional framers' intent. Where before, under *Ohio v.
Roberts*, the confrontation clause required only "adequate
indicia of reliability" for the admission of all hearsay evi-
dence, 448 U.S. at 66, a defendant's right of confrontation
now requires the unavailability of the witness and a prior
opportunity for cross-examination if "testimonial" hearsay
evidence is at issue. *Crawford*, 542 U.S. at 68. Criminal
defendants who were denied *Crawford*'s procedural require-
ments by reason of timing were not dispossessed of all
meaningful opportunity to challenge the admission of the
testimony. The Markels themselves, for example, challenged
the child hearsay testimony under the *Ohio v. Roberts*
standard at trial, in their first personal restraint petition,
and in a federal habeas corpus petition.

B. The Markels' Sentencing under *Apprendi* and *Blakely*

¶19 The United States Supreme Court's recent hold-
ing in *Blakely* dictates that "the 'statutory maximum' . . . is
the maximum sentence a judge may impose *solely on the*

---

[5] Additionally, as noted above, the Second Circuit has now explicitly ruled that
*Crawford* does not apply retroactively to cases on collateral review under the
*Teague* doctrine. *See Mungo*, 393 F.3d at 336.

*basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U.S. at 303. This holding clarified *Apprendi*, which stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

¶20 The Markels argue that their cases should be remanded for resentencing because the trial judge made "factual determinations" properly within the province of the jury under *Apprendi* and *Blakely*. Counts I and II of the third amended information allege acts constituting first degree rape of a child, both occurring on or about November 24, 1990. ER at 129-30. Counts IV and V allege acts occurring between September 1, 1990, and November 24, 1990, without alleging specific dates. The Markels suggest vaguely that the jury did not consider or decide exactly when the crimes were committed and, therefore, when the judge sentenced them for separate counts, he was making a factual determination that each count did not involve the same criminal conduct. This, the Markels reason, was an unconstitutional deprivation of their right to have a jury determine facts that increased their penalty because the four separate convictions resulted in the application an offender score of 9 at sentencing.

¶21 We first look to RCW 9.94A.525(5)(a), which states in relevant part as follows:

> In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except: (i) Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score.

Under this sentencing scheme, a "same criminal conduct" finding is an exception to the default rule that all convictions must count separately. Such a finding can operate *only* to decrease the otherwise applicable sentencing range. The jury determined that the Markels were guilty of four

separate counts, and no aggravating factors were considered by the judge. Accordingly, *Apprendi* and *Blakely* are not implicated under the facts of the Markels' cases because the "same criminal conduct" finding could only have lowered their applicable sentencing range and, therefore, the Markels are not entitled to resentencing.[6]

## C. Appointment of Counsel

¶22 The Markels request the appointment of their attorney, Rodney Reinbold, at public expense, as well as a waiver of the filing fees and record reproduction costs. While we compliment Mr. Reinbold for his pro bono efforts on this difficult and important case, the request for appointment of counsel and waiver of fees is denied.

## CONCLUSION

¶23 The stringent showing required to obtain the retroactive application of a new procedural rule, embodied in the *Teague* analysis, favors finality of judgment. The mere possibility that the outcome of a trial or hearing may have been impacted by the new procedural rule in *Crawford* does not lead inexorably to the necessity for a retroactive application of that rule. While the right of confrontation is a fundamental guaranty in the Sixth Amendment, pre-*Crawford* criminal cases, including those of the Markels, were adjudicated under the relatively well-developed "adequate indicia of reliability" standard dating back 24 years to *Ohio v. Roberts*. Accordingly, we hold that the new procedural rules for the admission of testimonial hearsay, as articulated in *Crawford*, do not apply retroactively to cases on collateral review. Further, we hold that *Apprendi* and *Blakely* are not implicated by the facts of the Markels' sentencing because a "same criminal conduct" finding could only lower the applicable range. The personal restraint

---

[6] Notably, the Markels' argument that the four counts constitute the same criminal conduct was rejected in their direct appeal and first personal restraint petition. ER at 178B-79.

petitions of Eric and Leadee Markel are dismissed, and the request for appointment of counsel and waiver of fees and costs is denied.

ALEXANDER, C.J.; MADSEN, BRIDGE, CHAMBERS, and FAIRHURST, JJ.; and IRELAND, J. Pro Tem., concur.

¶24 SANDERS, J. (dissenting) — The majority holds that a United States Supreme Court case which overrules 24 years of precedent fundamentally altering the standards for admission of hearsay evidence under the confrontation clause of the United States Constitution is not a new rule which requires the observance of procedures implicit in the concept of ordered liberty.[7] I disagree.

¶25 *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), marked a complete reversal of the confrontation clause standards articulated in *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). Before *Crawford*, the confrontation clause was thought to permit hearsay evidence where there were "adequate 'indicia of reliability,'" which could be "inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Roberts*, 448 U.S. at 66. But after *Crawford*, testimonial statements of absent witnesses are inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68. I therefore conclude this is a " 'watershed rule[ ] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding," and " 'without which the likelihood of an accurate conviction is *seriously* diminished.'" *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 2523, 159 L. Ed. 2d 442 (2004) (quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990)). Further, the new rule " 'alter[ed] our understanding of the *bedrock procedural elements*' essential to the fairness of [the] proceeding" and thus must be applied retroactively. *Sawyer v. Smith*,

---

[7] *See In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 326, 823 P.2d 492 (1992).

497 U.S. 227, 242, 110 S. Ct. 2822, 111 L. Ed. 2d 193 (1990) (quoting *Teague v. Lane*, 489 U.S. 288, 311, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)).

¶26  While I acknowledge the majority cites a significant number of cases that have reached a different conclusion, these cases are not binding precedent and were wrongly decided. If *Crawford* was not a "watershed" case, I do not know what is.

¶27  Further, while the majority cites many cases that essentially quote the "magic words" of *Teague* and *Schriro*, dismissing retroactivity claims with little further analysis, the majority rejects cases that provide in-depth retroactivity analysis and persuasive *reasoning*. Three courts that have comprehensively analyzed the retroactivity of United States Supreme Court decisions regarding the confrontation clause have concluded that such decisions apply retroactively.

¶28  Most recently, the Ninth Circuit concluded that *Crawford* applies retroactively in *Bockting v. Bayer*, 399 F.3d 1010 (9th Cir. 2005). *Bockting* resulted in three opinions and provides the best explication of the *Crawford* retroactivity issue yet published. The majority opinion noted "[t]he Supreme Court has repeatedly and without deviation held that the purpose of the Confrontation Clause is to promote accuracy." *Bockting*, 399 F.3d at 1017. "[T]he heart of the Court's concerns in *Crawford* was the *reliability* of admitted evidence. Where admitted evidence is unreliable, the accuracy of convictions is seriously undermined. . . . [The rule in *Crawford*] is an 'absolute pre-requisite to fundamental fairness.'" *Id.* at 1018-19 (quoting *Sawyer*, 497 U.S. at 244).

¶29  The *Bockting* majority further noted that "the [Supreme] Court describes the right of confrontation as a 'bedrock procedural guarantee.'" *Id.* at 1020. The concluding paragraph merits extensive quotation:

The Court has found repeatedly that the purpose of the Confrontation Clause is to promote accuracy, and thus *Crawford* rejected the *Roberts* framework as reflective of "a fundamental failure on our part to interpret the Constitution in a way that secures its intended constraint on judicial discretion." Viewing these holdings together leads to the conclusion that the *Crawford* rule is one without which the likelihood of accurate conviction is seriously diminished.

*Id.* at 1021 (citations omitted) (quoting *Crawford*, 541 U.S. at 67).

¶30 While "the Ninth Circuit's interpretation of federal constitutional law is persuasive authority," *State v. Hanna*, 123 Wn.2d 704, 718, 871 P.2d 135 (1994), *habeas granted sub nom. Hanna v. Riveland*, 87 F.3d 1034 (9th Cir. 1996), in this case it is more than persuasive. In the Ninth Circuit "[o]nce a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court." *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). The majority opinion in *Bockting* is binding on all federal district courts and all subsequent appellate panels until overruled en banc or until the United States Supreme Court decides the issue. Given the Ninth Circuit has now resolved the exact same issue contrary to the majority opinion, Markel will merely file a habeas petition and receive his relief in federal court. *See, e.g., Hanna*, 123 Wn.2d 704.

¶31 A similar exhaustive analysis of *Crawford*'s retroactivity was performed by New York State trial court judge Marcy L. Kahn. Justice Kahn ultimately held:

As noted, the Supreme Court held in *Crawford* itself, and the New York Court of Appeals has held in *Eastman*, that the right to confront witnesses is a "bedrock rule" of criminal procedure. (*Crawford v. Washington*, [541 U.S. at 42,] 124 S. Ct. at 1359; *People v. Eastman*, 85 N.Y.2d 265, 275[, 648 N.E.2d 459, 624 N.Y.S.2d 83 (1995)]). Further, the violation of a defendant's right to cross-examine a witness who has made a testimonial statement against him or her, according to *Crawford*, calls into question

the reliability of the testimony admitted at trial. This concern implicates the fundamental fairness of the trial, may have a significant effect on the integrity of the fact-finding process, and could compromise the jury's determination of a defendant's guilt, as long-standing Supreme Court precedent has shown. Accordingly, applying *Teague*'s teachings, this court finds that the rule announced in *Crawford* is a "watershed" rule of Criminal Procedure, and thus applies to cases on collateral review.

*People v. Watson*, 5 Misc. 3d 1013(A), 2004 N.Y. Slip Op. 51364(U), 2004 WL 2567124, at \*7, 2004 N.Y. Misc. LEXIS 2133.[8]

¶32  Finally, *Graham v. Hoke*, 946 F.2d 982 (2d Cir. 1991), examined the United States Supreme Court's reversal of its precedent regarding the confrontation clause. While the issue differed slightly,[9] the factors the Second Circuit found relevant to determine whether the new rule should be applied retroactively are very similar to the circumstances in *Crawford*. The United States Supreme Court's reversal of a landmark precedent concerning the " 'bedrock procedural element' . . . [of] the right of confrontation; a right which the Supreme Court long ago referred to as being '[o]ne of the fundamental guarantees of life and liberty' "[10] required the *Graham* court to find the rule should be applied retroactively. Given that *Crawford* (1) dealt with a very similar procedural rule concerning (2) the *same bedrock confrontation principle* and (3) overruling a landmark prior precedent, thus fundamentally changing our understanding of the requirements of the bedrock principle embodied in the confrontation clause, I can only conclude that the *Graham* court's extensive analysis is right on

[8] The New York Court of Appeals is the highest appellate court in the State of New York.

[9] *Graham* examined the United States Supreme Court's overruling of *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), by *Cruz v. New York*, 481 U.S. 186, 107 S. Ct. 1714, 95 L. Ed. 2d 162 (1987). *Cruz* overruled *Bruton* on the issue of whether admitting interlocking confessions in a joint trial violated the confrontation clause.

[10] *Graham*, 946 F.2d at 994 (quoting *Kirby v. United States*, 174 U.S. 47, 55, 19 S. Ct. 574, 577, 43 L. Ed. 890 (1899)).

target, and that *Crawford* must be applied retroactively. Collectively, *Bockting*, *Watson*, and *Graham* present the best reasoned and most persuasive analysis on whether *Crawford* should apply retroactively, and I would simply follow these courts' learned example.

¶33 If *Crawford* applied, the Markels would clearly be entitled to a new trial. The testimony of Officer Somday and Suzanne Craig constituted testimonial hearsay because Ricki's statements were obtained by police interrogation, as defined in *Crawford*. 541 U.S. at 52. Ricki was unavailable, having been ruled incompetent to testify because of her age, and there was no opportunity for prior cross-examination as required by *Crawford*. *Id.* at 1374.

¶34 I dissent.

C. JOHNSON, J., concurs with SANDERS, J.