[No. 53557-9-I.   Division One.   November 21, 2005.]

*In the Matter of the Personal Restraint of* WILLIAM H. THEDERS, JR., *Petitioner.*

*Tom P. Conom*, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Lee D. Yates, Deputy*, for respondent.

¶1 GROSSE, J. — A criminal defendant does not have a right under the confrontation clause of the Sixth Amendment to prevent the introduction of incriminating statements of a codefendant unless those statements are offered for the truth of the matter asserted. When they are offered for reasons other than proving the truth of the matter, as here, they are not hearsay and are not contrary to *Crawford v. Washington*.[1] Moreover, the Personal Restraint Petition (PRP) is a collateral attack on a trial that occurred in 2001 and on a direct appeal filed in early 2003, long before *Crawford* was decided and to which that case does not apply. As a result, the remaining collateral attack based on allegations of ineffective assistance of appellate counsel fails as counsel's performance was neither deficient nor prejudicial. The petition is denied.

## FACTS

¶2 William H. Theders, Jr., files a PRP alleging he is being unlawfully held in custody pursuant to a judgment obtained in violation of the United States and Washington Constitutions.

¶3 Theders and codefendant Larry F. Graves were charged with attempted first degree murder. Theders was found guilty as an accomplice following trial. Graves, who acted as the principal, pleaded guilty following Theders' trial. At trial, Theders was represented by retained counsel, Tom P. Conom. Conom raised a number of arguments against the use of custodial and noncustodial statements made by codefendant Graves, which were admitted to show Theders' state of mind and knowledge. Conom argued that the admission of the statements was a violation of Theders'

[1] 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

right of confrontation. Statements admitted at trial were those made by the nontestifying codefendant and similar statements made by Theders. By the time of trial, the original statements by Graves and Theders were acknowledged by them to be *false*.

¶4 Following his conviction, Theders filed a motion for a new trial specifically alleging that the trial court erred in denying his motion in limine to exclude any custodial statements of the codefendant to implicate Theders or the one-sided telephone conversation of the codefendant to show Theders' state of mind, expressly arguing confrontation issues. The motion was denied.

¶5 Theders appealed his conviction. He was represented on appeal by appointed counsel Christopher Gibson and Robert Weppner. Appellate counsel did not assign error to or argue Sixth Amendment confrontation issues, thus they were not considered or decided in the direct appeal. Theders challenged other evidentiary rulings made by the trial court and jury instructions. The conviction was affirmed in an unpublished opinion.[2] Theders' petition for review was denied by the state Supreme Court.

¶6 Theders filed this PRP alleging ineffective assistance of appellate counsel and violations of his Sixth Amendment right of confrontation under the confrontation clause. Theders is once again represented by Tom P. Conom, original trial counsel.

¶7 A full recitation of the substantive facts is set forth in the prior unpublished opinion of this court. But, in short, Angela and Larry Graves lived with Larry's longtime friend Theders in Monroe, Washington. The Graves' marriage was not stable and, with the support of her friend Valerie Anderson, Angela asked for a dissolution of the marriage. Larry was unhappy about the prospect of the dissolution and knew that Anderson was supportive of Angela's decision.

---

[2] *State v. Theders*, noted at 115 Wn. App. 1028 (2003).

¶8 Angela and her children went to Anderson's house to spend a weekend in early November of 2000. Angela and her children returned to Theders' house but Anderson called Angela and told her someone had cut a hole in the top of her convertible. Larry offered to fix the hole with duct tape. Anderson came to the house and visited with Angela while Larry fixed the roof of the car.

¶9 After fixing the roof of Anderson's car, Larry and Theders said they were going to Petsmart at the Everett Mall to buy a dog bed for a new puppy Larry purchased for his children. They left in Theders' pick-up. Sometime after they left, Larry used his cellular telephone (cell phone) to call Angela to tell her that the store was closed and that he and Theders were coming home. Angela testified that she heard Theders in the background while Larry talked to her. Shortly after this call, Valerie Anderson left to drive home. Later, Larry called Angela again and said he and Theders were in Snohomish and that they were going to try to find a dog bed at another store. At trial, the content of the cell phone calls was entered into evidence through the testimony of Angela over objection of counsel. The evidence was admitted to show Theders' state of mind, that he knew what was happening. Theders claimed he had a cold and had no reason to listen to what Larry was talking about. He testified that he did not hear or pay attention to Larry's calls to Angela.

¶10 Valerie Anderson arrived home. As she walked to her front door a man wearing dark clothes and a ski mask grabbed her from behind. The attacker held a serrated knife to Anderson's throat and the two struggled. Anderson said she recognized Larry's voice when he shouted at her to be quiet. Anderson sustained several severe cuts to her throat, face and hands.

¶11 The attacker fled when a neighbor, who heard Anderson screaming, yelled and shined a flashlight on them. The attacker ran towards a slow moving pickup truck at the end of Anderson's driveway, got in and drove away. The neighbors called 911. Anderson was interviewed

at the hospital, where she identified Larry Graves as her attacker. Police recovered a bent, serrated knife and a ski mask at the scene.

¶12 Angela Graves said that Theders and Larry returned home, but that Theders left shortly thereafter. Police arrived and arrested Larry. Larry gave a statement to the police saying that he and Theders went to Petsmart at the Everett Mall, but because it was closed, they stopped at other places to find a dog bed, including a Fred Meyer store. They then returned home.

¶13 Angela called Theders and asked him to come home to talk to the police. When Theders arrived, the detective told him that Larry was arrested because police believed he stabbed someone. Theders responded that it was impossible because Larry had been with him. Theders told the officer they had been together from 5:30 to 7:30 P.M.

¶14 After being advised of his *Miranda*[3] rights, Theders signed an almost identical statement to the one given by Larry, that he and Larry left the house to go to the Everett Mall to buy a dog bed for the new puppy. The store was closed so they went to Fred Meyer and then returned home. He also indicated that he had been to Anderson's house only once before and that he did not know how to get there. He said that he and Larry did not go to Anderson's house and he could not explain how Anderson thought it was Larry that attacked her.

¶15 Police told Theders they had information that a truck with two male occupants, one wearing glasses, as Theders does, was involved in the crime. After asking about potential perjury charges, Theders gave a second written statement to the police admitting that he drove Larry to Anderson's house, dropped Larry there and parked nearby. He saw Anderson arrive home and after a few minutes he drove back to Anderson's house. Larry walked to the truck and got in. Larry was shaky and nervous and told Theders he had spoken with Anderson. Theders denied knowing

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

that Anderson had been hurt by Larry until he was later told by the police.

¶16 The State prosecuted Theders on an accomplice liability theory. Theders' defense at trial was that he had no knowledge that Larry planned to hurt or attack Anderson. The State argued that Theders knew Larry planned to kill Anderson and that he assisted Larry by helping to conjure up and provide him with a false alibi as well as driving him to and from Anderson's house. The State emphasized Theders' conflicting statements to police, the statement of Larry and Larry's side of his cell phone conversations with Angela to establish an alibi. The State emphasized the interlocking false alibi statements of the two men and called them the key piece of evidence to establish Theders' knowledge that Larry was planning to kill Anderson. The State also provided testimony of a jailhouse informant to show that at the time Theders knew exactly what Larry was planning on doing and that Larry had a ski mask and a serrated knife in his possession.

## ANALYSIS

¶17 A PRP is not a substitute for an appeal. "[C]ollateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders."[4] Thus, to obtain relief through collateral review (PRP) Theders must show he was actually and substantially prejudiced by a violation of constitutional error or that nonconstitutional error occurred constituting a fundamental defect that inherently resulted in a complete miscarriage of justice.[5] The petitioner bears the burden of establishing prejudice by a preponderance of the evidence, but that burden "may be waived where the error gives rise to a

[4] *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 86, 660 P.2d 263 (1983).

[5] *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 267, 111 P.3d 249 (2005); *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 473, 965 P.2d 593 (1998); *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994).

conclusive presumption of prejudice."[6] However, the court explicitly rejected the suggestion made in dicta in prior opinions that constitutional errors that are per se prejudicial on direct appeal "will also be presumed prejudicial for the purposes of personal restraint petitions."[7]

¶18 Initially, Theders claims the trial court committed prejudicial error by admitting the custodial and cell phone statements of the nontestifying codefendant, allegedly referring to and implicating Theders without confrontation or limiting instruction in violation of the Sixth Amendment.

¶19 In supplemental briefing, Theders claims that the *Crawford* case governs the PRP and compels the grant of a new trial enabling him to confront the witnesses against him. However, the case of *In re Personal Restraint Petition of Markel*[8] indicates otherwise. *Markel* holds that *Crawford*, while constituting a new rule of criminal procedure, did not constitute a " ' "watershed rule[ ] of criminal procedure" ' " implicating the fundamental fairness and accuracy of the trial and does not apply retroactively to cases on collateral review.[9] Criminal defendants who were denied the procedural requirements of *Crawford* by reason of timing were not dispossessed of all meaningful opportunity to challenge the admission of the testimony. There is no dispute that Theders' case was mandated before the *Crawford* case was handed down.

¶20 Theders' underlying claim is that the trial court erred by admitting hearsay statements made by Larry Graves to his wife in a cell phone call while traveling in Theders' truck and by admitting a written statement Larry made to police after his arrest. Both of these statements set forth Graves' false alibi for the time of the crime. Theders

---

[6] *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328, 823 P.2d 492 (1992).

[7] *St. Pierre*, 118 Wn.2d at 328; *see also In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804, 100 P.3d 291 (2004).

[8] *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 111 P.3d 249 (2005).

[9] *Markel*, 154 Wn.2d at 269 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 2523, 159 L. Ed. 2d 442 (2004)).

argues these statements directly implicated him and were admitted in violation of his right to confront the witness against him.

¶21 The trial court conducted a hearing related to the admissibility of Graves' exculpatory alibi statements to his wife and to the police. The court admitted the cell phone testimony as nonhearsay, indicating it was not offered to prove the truth of the matter asserted.[10] The court found that Theders was present when Graves made his statements to his wife. The statements were not being offered to prove that Larry and Theders were actually where they said they were, but rather to show Theders' knowledge and agreement to Larry's false statement as to their location and for the development of the false alibi. The court found it was relevant and important that Theders gave a similar alibi to police when he was first questioned.

¶22 The trial court also admitted Larry Graves' false, nonhearsay, alibi statements made to the police following his arrest. The court found that the evidence was relevant to show collusion and a meeting of the minds between Larry and Theders on the story they would give if later questioned. The trial court found that the statements were more probative than prejudicial.[11]

¶23 The trial court also rejected Theders' claim that his constitutional right to confrontation was violated because the content of the statements was not hearsay and further did not incriminate him. The trial court distinguished *Bruton v. United States*,[12] a case argued by trial counsel and central to Theders' argument in this PRP. Unlike the facts here, the *Bruton* case dealt with statements of a codefendant that directly implicated the defendant and were offered for the truth of the matter asserted.

---

[10] ER 801(c).

[11] The trial court reasoned that the prejudice was low because the statement put Theders in a different location when the crime occurred.

[12] *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).

¶24 Theders relies on the majority Sixth Circuit decision in *Lyle v. Koehler*[13] to support his argument that it was error to admit the alibi statements of his codefendant.[14] The Sixth Circuit adhered to *Lyle* in another case[15] but admitted that a majority of federal circuits do not follow its view of looking beyond the face of the contested extrajudicial statements when determining the incriminating value and whether the statements were in fact hearsay.

¶25 We decline to adopt the broad view of hearsay espoused by the majority in *Lyle*. The "matter asserted" is the matter set forth in the writing or speech on its face, not the matter broadly argued by the proponent of the evidence.[16]

¶26 Although it does not appear that courts in Washington have previously addressed this issue, this court has strictly applied the definition of hearsay contained in ER 801(c),[17] not the broader view of hearsay contained in *Lyle*. The closest case on the issue is *State v. Alvarez*,[18] where, in a pre-*Crawford* case, this court upheld the admission of testimony made by a nontestifying codefendant tending to establish the defendant's knowledge of criminal activity.

¶27 Theders also relies on *State v. Medina*.[19] Theders argues that the *Medina* case supports the fact that his confrontation rights were violated by the introduction of his

---

[13] *Lyle v. Koehler*, 720 F.2d 426 (6th Cir. 1983).

[14] In *Lyle*, the court found that it was error to admit letters from a nontestifying codefendant urging the defendant to support or adopt a false alibi. The court found the letters were hearsay because, even though the content did not implicate the defendant directly in the crime, by inference the letters showed a guilty mind. Thus even though technically not hearsay, the letters constituted a substantial portion of the State's evidence, and the court found admission was not harmless beyond a reasonable doubt.

[15] *Marsh v. Richardson*, 781 F.2d 1201 (6th Cir. 1986).

[16] *See State v. Esposito*, 223 Conn. 299, 613 A.2d 242, 251 (1992).

[17] *State v. Collins*, 76 Wn. App. 496, 498, 886 P.2d 243 (1995).

[18] *State v. Alvarez*, 45 Wn. App. 407, 410, 726 P.2d 43 (1986).

[19] *State v. Medina*, 112 Wn. App. 40, 48 P.3d 1005 (2002). It was the issuance of this case that caused trial counsel to write to appointed appellate counsel urging them to argue confrontation issues.

codefendant's statements pertaining to alibi. But *Medina* deals with a redacted version of a codefendant's confession implicating Medina. The issue in *Medina* was a pure *Bruton* issue, not whether a facially nonincriminatory false alibi statement was properly admitted into evidence.

¶28 Even though *Crawford* will not be applied retroactively, it and other post-*Crawford* cases in Washington are instructive. The *Crawford* Court specifically retained the preexisting rule of *Tennessee v. Street*,[20] that "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[21] There is no doubt that Washington decisions following *Crawford* recognize that "[w]hen out-of-court assertions are not introduced to prove the truth of the matter asserted, they are not hearsay and no Confrontation Clause concerns arise."[22] "[E]ven testimonial statements may be admitted if offered for purposes other than to prove the truth of the matter asserted."[23] Similarly, the *Crawford* Court expressly excluded certain types of statements from its holding "that by their nature [are] not testimonial—for example, business records or statements in furtherance of a conspiracy."[24]

¶29 The trial court did not err in admitting the statements of the nontestifying codefendant where the statements were not offered for their truth. The Sixth Amendment right of confrontation is not implicated.

¶30 Theders also claims that but for the ineffective appellate representation of appointed appellate counsel, the confrontation issues would have been argued on direct appeal and he would now be entitled to the benefit of *Crawford*. Theders asserts that appointed counsel on direct

---

[20] *Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 85 L. Ed. 2d 425 (1985).

[21] *Crawford*, 541 U.S. at 59 n.9 (citing *Street*, 471 U.S. at 414).

[22] *State v. Mason*, 127 Wn. App. 554, 566 n.26, 110 P.3d 245 (2005); *State v. Moses*, 129 Wn. App. 718, 119 P.3d 906 (2005).

[23] *State v. Davis*, 154 Wn.2d 291, 301, 111 P.3d 844 (2005).

[24] *Crawford*, 541 U.S. at 56.

appeal failed to provide effective appellate representation when his preserved Sixth Amendment constitutional error arguments made at trial were not raised, briefed, or argued on appeal.

¶31 The constitutional right to counsel includes the right to effective assistance of counsel.[25] "[A] criminal defendant has a right to have effective assistance of counsel on his first appeal of right."[26] However, Theders bears the burden of establishing a violation of that right by showing both deficient performance and resulting prejudice.[27] Deficient performance is established on proof that counsel's representation "fell below an objective standard of reasonableness based on consideration of all the circumstances."[28] Prejudice is established where "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different."[29] There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment.[30] Failure to raise all possible nonfrivolous issues on appeal is not ineffective assistance, and the exercise of independent judgment in deciding what issues may lead to success is the heart of the appellate attorney's role.[31]

¶32 Theders argues that he was denied his right of confrontation when the trial court admitted the codefendant's statement and testimony of the one-sided cell phone calls. He notes that trial counsel wrote to appointed appellate counsel specifically noting a new case supporting this

---

[25] *Strickland v. Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), *adopted in State v. Jeffries,* 105 Wn.2d 398, 418, 717 P.2d 722 (1986).

[26] *In re Pers. Restraint of Dalluge,* 152 Wn.2d 772, 787, 100 P.3d 279 (2004) (citing *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985)).

[27] *State v. McFarland,* 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[28] *McFarland,* 127 Wn.2d at 334-35.

[29] *McFarland,* 127 Wn.2d at 335.

[30] *McFarland,* 127 Wn.2d at 335.

[31] *In re Pers. Restraint of Lord,* 123 Wn.2d 296, 314, 868 P.2d 835 (1994).

claim and urging that the Sixth Amendment confrontation argument be made. Appointed counsel still chose not to raise the claim. Theders argues that the importance of the claim is borne out by the United States Supreme Court's opinion in *Crawford v. Washington*.[32] Therefore, Theders claims that he has shown that appellate counsel failed to raise an issue with underlying merit, which satisfies the first prong of the ineffective assistance test.[33]

¶33 But, as noted above, *Crawford* does not apply to this case.[34] Further, at the time of Theders' direct appeal, the state of the law regarding confrontation issues and the admissibility of extrajudicial statements, such as those at issue here, was either unsettled, or more likely settled against his position, by a majority of courts.

¶34 Theders' appointed appellate attorneys were experienced and skilled practitioners. They exercised their independent judgment in deciding the issues to raise on direct appeal. Appointed counsel filed a brief raising four issues. The issues raised were significant and if successful could have led to a new trial. Counsel filed a petition for review once they were unsuccessful on appeal, urging the Supreme Court to accept review.

¶35 The decision of appellate counsel not to pursue the claims raised on collateral attack does not prove that their performance fell below an objective standard of reasonableness. We determine there was no ineffective assistance of appellate counsel and the other issues Theders raises in this PRP are resolved under the collateral attack standard, not the standard of direct review as argued by Theders.[35]

---

[32] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[33] *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 344, 945 P.2d 196 (1997).

[34] The statements of the codefendant are not hearsay as they were not admitted for the truth of the matter asserted.

[35] *See In re Pers. Restraint of Frampton*, 45 Wn. App. 554, 563, 726 P.2d 486 (1986). The remedy for ineffective assistance of appellate counsel is reinstatement of the appeal and remand or for decision if the issues are fully briefed before this court in the PRP.

¶36 Further, even if we were to find ineffective assistance of appellate counsel, the holding in *Crawford* does not support the second prong of the ineffective assistance test. Theders cannot show or prove the necessary prejudice prong required, as the statements were properly admitted.

¶37 The petition is denied.

APPELWICK, A.C.J., and BAKER, J., concur.

Review denied at 156 Wn.2d 1031 (2006).