IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35218-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MICHAEL LEVI BACKEMEYER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Defense counsel performs deficiently when a jury is manifestly confused about a legal defense, yet counsel fails to assist the jury. Deficient performance can be prejudicial when the jury's manifest confusion goes to the heart of a defendant's self-defense theory.

Here, a deliberating jury sent a question to the judge. The question showed that the jury did not understand the law of self-defense. A second question from the jury confirmed this. Despite this manifest confusion, defense counsel did not ask the trial court to instruct the jury to review the self-defense instruction. We conclude that defense counsel performed deficiently and that the deficient performance was prejudicial. We reverse Michael Backemeyer's conviction and grant him a new trial.

FACTS

Backemeyer, who is 5'8" and 159 pounds, went into a Spokane bar one evening. He had multiple tattoos, a shaved head, and looked scruffy.

Nicholas Stafford worked as a bouncer at the bar. Although not scheduled to work that night, he had been called to work because the bar was busy. Stafford was visiting with friends on the floor, drinking a beverage, and wearing jeans and a T-shirt. One patron later testified she thought Stafford was just another patron at the bar.

Stafford's attention was drawn to Backemeyer, and he decided to keep an eye on him. Stafford suspected that Backemeyer was on some kind of drug and thought he was bothering people. Stafford went to use the restroom and saw Backemeyer in the restroom drinking a beer that was not sold in the bar and rolling a marijuana joint. Stafford testified that he then identified himself as a bouncer or employee for the bar.[1] Stafford took the beer from Backemeyer and told him he had to leave. Stafford left the restroom to throw away the beer, and Backemeyer remained in the restroom.

Stafford returned to the restroom and told Backemeyer that it was time for him to go. Backemeyer responded that he had to gather his coat and phone and then leave. After

---

[1] Although Backemeyer disputed that Stafford identified himself as an employee, our review requires us to presume the jury believed Stafford.

2

the two wandered around the bar for 5 to 10 minutes looking for the items, Stafford said, "'I've had enough, it's time to go.'" Report of Proceedings (RP) at 232. Backemeyer told Stafford to get out of his face and started pushing Stafford. A patron testified that Stafford responded by twice pushing Backemeyer down on the floor and eventually getting on top of him.

Backemeyer testified that Stafford tackled him, got on top, elbowed him twice in the face, and knocked out some of his teeth. Stafford was much bigger than Backemeyer, and Backemeyer testified that he was afraid of being seriously hurt. Backemeyer, still on his back, pulled out his pocket knife and cut Stafford a number of times to get him off. Stafford suffered cuts to his ear, face, shoulder, and back. Some of the cuts required sutures, and one cut injured Stafford's left eye. The bartender intervened to help Stafford, but Backemeyer avoided both men and ran out of the bar.

The State charged Backemeyer with first degree assault with a deadly weapon. At trial, Backemeyer argued he did not know that Stafford was an employee of the bar. He asserted he acted in self-defense and that he was in fear of great bodily harm.

Court's instruction 7 was the to-convict instruction:

> To convict the defendant of the crime of assault in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 16th day of December, 2016, the defendant assaulted Nicholas Stafford.
>
> (2) That the assault was committed with a deadly weapon;
>
> (3) That the defendant acted with intent to inflict great bodily harm . . . .

Clerk's Papers (CP) at 12.

Court's instruction 14 was the self-defense instruction:

> It is a defense to a charge of first degree assault . . . that the force used was lawful as defined in this instruction.
>
> The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.
>
> The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.
>
> The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

CP at 19.

Court's instruction 15 supplemented the self-defense instruction:

4

> A person is entitled to act on appearances in defending himself, if he believes in good faith and on reasonable grounds that he is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

CP at 20.

Court's instruction 16 explained when a person is not required to retreat:

> It is lawful for a person who is in a place *where that person has a right to be* and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force.

CP at 21 (emphasis added).

This last instruction was proposed by the defense and objected to by the State. The State argued that Backemeyer had no right to defend himself because his right to be in the bar had been revoked. The court allowed the instruction because there was evidence Backemeyer reasonably believed that Stafford was just another patron.

During its closing argument, the State argued that instruction 16 did not apply to Backemeyer because his right to be at the bar had been revoked by Stafford.

During Backemeyer's closing, defense counsel responded to the State's argument:

5

> That doesn't take away from the entire self-defense claim. . . . Self-defense is still there even if you think he didn't have a lawful right to be there. If you are trespassed from a store and you go back [to the store] and [someone attacks and tries to kill you], you do not have to stand there and let them kill you because you've been trespassed here. The law gives you the right to defend yourself [even] if you've been trespassed.

Report of Proceedings (RP) at 501.

During deliberations, the jury submitted two questions to the trial court. It first asked:

> Instruction #16 re: "in a place that a person has a right to be." Does defendant's possession of marijuana, outside beverage and/or being asked to leave negate his right to be there and therefore right to lawful self-defense?

CP at 30.

The State proposed the response, "'Read your jury instructions.'" RP at 512. Defense counsel concurred, but added: "I'm a little concerned that they're trying to get rid of self-defense based off . . . instruction [16] . . . ." RP at 512. Read in isolation, instruction 16 suggested that Backemeyer had the right of self-defense *if* he was "in a place where [he] ha[d] a right to be." CP at 21. But read with the self-defense instruction, instruction 14, it was clear that Backemeyer retained his right to self-defense even if he was committing a crime or was a trespasser. The trial court responded to the jury that it should read the instructions.

6

After further deliberations, the jury asked:

> During any event, does commission of an illegal act negate the right to use lawful force.

CP at 31.

This second question made it clear that the jury had not reviewed instruction 14, the self-defense instruction. Had the jury reviewed it, there would be no need to ask the second question. Nevertheless, both parties agreed to the court responding, "'Please read your instructions.'" RP at 514.

Not long after, the jury returned a verdict of guilty on first degree assault while armed with a deadly weapon. The trial court entered a judgment of conviction and sentenced Backemeyer to 140 months of incarceration.

Backemeyer appealed.

## ANALYSIS

Backemeyer argues that he was denied effective assistance of counsel when his attorney failed him in three ways. We focus on whether Backemeyer was denied effective assistance of counsel when the jury's questions to the court made it manifest that the jury did not understand the law of self-defense and counsels' agreed response did not provide the jury any clarity.

7

No. 35218-8-III
*State v. Backemeyer*

*Standard of review*

A claim of ineffective assistance of counsel is a mixed question of law and fact, which we review de novo. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

*Ineffective assistance of counsel*

To meaningfully protect an accused's right to counsel, an accused is entitled to effective assistance of counsel. *Id.* at 686. Courts apply a two-pronged test to determine if counsel provided effective assistance: (1) whether counsel performed deficiently, and (2) whether the deficient performance prejudiced the defendant. *Id.* at 687.

1.    *Deficient performance*

To satisfy the first prong, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The burden is on the defendant to show deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). This court gives great deference to the trial counsel's performance and begins the analysis with a strong presumption that counsel performed effectively. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015).

Deficient performance is not shown by matters that go to trial strategy or tactics. *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994). However, the presumption that defense counsel performed adequately is overcome when there is no conceivable legitimate tactic explaining counsel's performance. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

After the jury's first question to the court, defense counsel expressed his suspicion that the jury's confusion might lead it to convict without understanding Backemeyer's right to self-defense. Counsel's suspicion was confirmed when the jury asked its second question. The jury's second question was whether Backemeyer's commission of an illegal act negated his right to use self-defense. This question clearly showed that the jury had not reviewed instruction 14, the self-defense instruction. Had the jury read that instruction, the jury would not have asked the second question because instruction 14 clearly allowed a person who had committed an illegal act to defend himself.

We conclude that defense counsel had no legitimate strategy for agreeing to again tell the jury to merely "'Please read your instructions.'" RP at 514. The jury's questions concerned the right to use self-defense. *There was only one instruction to consult, instruction 14.* Because it was clear that the jury had not read instruction 14 after the court recently advised the jury to read the instructions, effective representation required

9

defense counsel to do more than provide the same generic response that had failed to assist the jury. Here, defense counsel should have asked the trial court to tell the jury to review instruction 14. That instruction directly answered the jury's questions.

We see no reason why, if asked, the trial court would have refused such a request. It was obvious that the jury did not understand the law of self-defense, and instruction 14 set forth the entire law on that subject. Had the trial court refused defense counsel's request, its refusal would have been contrary to its responsibility to ensure that the jury understood the law. *Bollenbach v. United States*, 326 U.S. 607, 612-13, 66 S. Ct. 402, 90 L. Ed. 350 (1946) ("When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."); *see also United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir. 1986) ("[T]he [trial] court has the responsibility to eliminate confusion when a jury asks for clarification of a particular issue.").

### 2. Prejudice

Prejudice is shown where "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This showing is made when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is a

10

probability sufficient to undermine confidence in the outcome. *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003) (citing *Strickland*, 466 U.S. at 694).

Backemeyer's liberty rested on his assertion that his actions were lawful self-defense. For this reason, it was paramount for the jury to understand the law of self-defense.

The record is manifestly clear that the jury did not review instruction 14, which set forth the law of self-defense. The rebuttable presumption that the jury understands and follows the court's instructions was overcome. Not once, but twice, the jury sent questions to the court that were plainly answerable if the jury had reviewed the self-defense instruction. The repeated jury questions show that the jury's verdict likely depended on whether Backemeyer's status as a trespasser or a criminal precluded his right to self-defense. The correct answer, based on instruction 14, was that Backemeyer's status did not preclude his right to self-defense. But the jury's verdict shows that it believed Backemeyer's status did preclude his right to self-defense.

We conclude there is a reasonable probability that had Backemeyer's jury correctly understood the law of self-defense, it would not have convicted Backemeyer. Defense counsel's deficient performance was therefore prejudicial.

11

No. 35218-8-III
*State v. Backemeyer*

Because Backemeyer did not receive effective assistance of counsel, we reverse

his conviction and order a new trial.

Lawrence-Berrey, C.J.

I CONCUR:

Pennell, J.

12

No. 35218-8-III

KORSMO, J. (dissenting) — There are three reasons appellant's challenge fails. First, the trial court did not err in giving the response that it did. Thus, the defense attorney could not have erred in failing to challenge a correct response, nor was it prejudicial error to fail to request a response that no authority required the trial judge to provide. Second, this court misreads the import of instruction 16, an instruction that the trial court erroneously gave over the prosecutor's objection. Third, because there was no factual basis for giving the instruction, the invited error doctrine prohibits the defendant from benefiting from the alleged confusion caused by the instruction.

As to the first issue, Michael Backemeyer has not established that his attorney rendered constitutionally deficient service. The well-known *Strickland* standards govern this case. To prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and the error was so significant, in light of the entire trial record, that it deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 689-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

CrR 6.15 governs both the process of proposing and challenging jury instructions, as well as the procedure for answering jury inquiries. *See* CrR 6.15(a), (c), (d), and (f). Because there is no Washington precedent supporting the majority's argument, it is important to look to the analytically similar problem presented by defense counsel's failure to propose jury instructions. Where the claim of ineffective assistance is based on counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice. *E.g., State v. Johnston*, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007).

Applying that standard to the failure to provide a different answer to the jury inquiries, Mr. Backemeyer's appeal is doomed. First, he cannot show that his attorney erred. The fact that the majority had to go outside of Washington to even find authority suggesting that its preferred answer should have been given instead of the answer that was provided also shows that counsel did not err. *E.g., In re Pers. Restraint of Theders*, 130 Wn. App. 422, 430-35, 123 P.3d 489 (2005) (appellate attorney not ineffective for failing to argue theory of hearsay and confrontation supported by one federal circuit court). He simply cannot show error due to counsel's failure to know and argue potentially persuasive foreign authority.

Mr. Backemeyer also cannot show prejudice from the alleged error. When ineffective assistance is raised in the context of failing to ask a trial judge to make a

2

*discretionary* decision, the defendant—in order to demonstrate prejudice—must show that the judge would have granted the request. *E.g.*, *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (failure to seek to suppress evidence); *State v. Cienfuegos*, 144 Wn.2d 222, 227-30, 25 P.3d 1011 (2001) (harmless error in failing to seek necessary diminished capacity instruction); *Johnston*, 143 Wn. App. at 21 (counsel could not be ineffective for failing to request instruction that was not mandatory). He cannot show that the trial judge would have granted the request. The answer given by the trial court is, as the majority admits, correct. The jury should read *all* of the instructions, an action that would have answered the questions. The majority cites no authority that suggests a trial court has to give (an allegedly) more correct answer in lieu of the correct answer that was provided. As the trial judge had no mandatory duty to answer the question in the way the majority believes it should have been answered, there was no prejudice from the attorney's alleged failure to make the request.

Mr. Backemeyer has not demonstrated either error by his counsel or prejudice from the alleged error. He has not established that his counsel performed ineffectively.

The majority also misreads the import of instruction 16, a problem that permeates its analysis. The instruction is concerned with the concept of standing one's ground— i.e., there is no duty to retreat. Mistake of fact concerning the need to use self-defense, the topic of instruction 15, is a separate concept. Instruction 16 informed jurors that the

3

lawfulness of Mr. Backemeyer's presence on the property was only at issue with respect to his claim that he did not have to leave the restaurant.[1]

Nonetheless, the majority contends that the jury inquiry must somehow mean it did not know how to apply self-defense. However, one can reach that conclusion only by assuming that the jury ignored instructions 14 and 15 while also misreading instruction 16. There is no factual basis for those assumptions. An inquiry is simply a question for which one or more members of the jury sought clarification. The trial judge properly told the jury to read *all* of the instructions. That was the correct answer here, as it is in most instances.

But the majority, without any basis in the instructions or the record, treats the inquiries as if the jury was using instruction 16 to negate the other self-defense instructions. There simply is no evidence to support that belief. The inquiries may suggest that some members of the jury did not understand how the instructions interacted, but the inquiries do not establish that the jury rejected the court's subsequent advice to read *all* of the instructions or that the ensuing guilty verdict meant that instruction 16 had been used contrary to the court's intent. That is nothing more than speculation. The two inquiries meant that someone had a question, not that the jury was acting contrary to law.

---

[1] The prosecutor made a similar point in her argument, pointing out to the jury that instruction 16 was irrelevant since Mr. Backemeyer's right to remain on the premises had been revoked. Report of Proceedings at 466.

The majority reads too much into the two inquiries. They do not establish that the jury as a whole subsequently neglected the court's instructions and acted unlawfully.

Finally, we should reject this argument because the alleged error is of the defendant's own making. The invited error doctrine precludes Mr. Backemeyer from benefiting from his own mistake. *E.g.*, *State v. Studd*, 137 Wn.2d 533, 545-49, 973 P.2d 1049 (1999). We are entitled to affirm on any ground supported in the record. *State v. Duarte Vela*, 200 Wn. App. 306, 327-28, 402 P.3d 281 (2017). Here, the prosecutor argued her objection to the instruction in the trial court. This issue is properly before us.[2] *Id.*

Instruction 16 was erroneous from the get-go. The no duty to retreat instruction may only be given when retreat is a viable option and the defendant is in a place he has a right to be. *State v. Allery*, 101 Wn.2d 591, 598, 682 P.2d 312 (1984); *State v. Hiatt*, 187 Wash. 226, 237, 60 P.2d 71 (1936); *Duarte Vela*, 200 Wn. App. at 327-28.[3] Mr. Backemeyer's right to be in the establishment was revoked by management and he lost

---

[2] The prosecutor could not cross appeal from this issue since she was not an aggrieved party who could obtain any affirmative relief. RAP 2.4(a), 3.1.

[3] Similar is the law concerning felony murder. *State v. Dennison*, 115 Wn.2d 609, 801 P.2d 193 (1990). There the defendant, who was armed with a gun, had been interrupted in the course of a burglary by a tenant who also was armed with a gun. *Id.* at 613. A brief firefight ensued, allegedly started by the tenant, that ended in the tenant's death. *Id.* The trial court denied an instruction on self-defense and the jury convicted Dennison of felony murder. *Id.* at 613-14. The conviction was affirmed on appeal, with the court rejecting the idea that self-defense could be raised without first withdrawing from the crime. *Id.* at 614-18.

his right to be on the premises. *E.g.*, *State v. Davis*, 90 Wn. App. 776, 781, 954 P.2d 325 (1998). His mistaken belief that his victim was not an employee is irrelevant to his legal status to be there. There was no right to stand his ground.

Moreover, his alleged mistake about his right to remain on the property does not entitle him to argue the point to the jury. Washington does not recognize "imperfect" self-defense, i.e., use of force when the actor is mistaken about the need to act. *State v. Hughes*, 106 Wn.2d 176, 190-91, 721 P.2d 902 (1986). Evidence of imperfect self-defense, however, is still admissible in Washington since it may provide insight into the defendant's mental state. *Id.* at 189-90. That was one of the purposes served by instruction 15.

The prosecutor did not argue, and the jury instructions did not suggest, that Mr. Backemeyer was unable to assert self-defense merely because he was unlawfully on the premises. To the extent he argues that his no duty to retreat instruction created such an argument, it fails due to his invitation of that alleged error.

For all of these reasons, Mr. Backemeyer's argument fails. I respectfully dissent.

Korsmo, J.

6